May Term,
1847.

HANNA
v.
THE BOARD OF
COMMISSION-
ERS, &c.

*Per Curiam.*—The judgment is affirmed with costs.

*S. B. Gookins*, for the plaintiff.

*W. D. Griswold, J. P. Usher*, and *R. C. Gregory*, for the defendant.

HANNA and Others *v.* THE BOARD OF COMMISSIONERS OF ALLEN COUNTY.

The *Wabash* and *Erie* canal lands, purchased of the state under the act of 1830, (part of the purchase-money being unpaid, and the legal title remaining in the state,) were liable for county and road taxes under the revenue laws of 1839 and 1841.

The act of 1834 exempted said lands, when sold by the state, from taxes until payment of the purchase-money; but that act (the right of repealing it being reserved) did not prevent the legislature from afterwards including those, lands, sold before or after its passage and not paid for, in the list of taxable property.

Tuesday,
May 25.

APPEAL from the *Allen* Circuit Court.

SMITH, J.—*Samuel Hanna, Allen Hamilton*, and *Hugh M'Culloch*, executors of *Samuel Lewis*, deceased, brought an action of assumpsit against the board of commissioners of *Allen* county, in the *Allen* Circuit Court, at the *February* term for the year 1844. The declaration contained two counts; the first being for money had and received for the use of said *Lewis* in his lifetime, and the second for money had and received by the defendant for the use of the plaintiffs as executors, &c. Plea, the general issue.

The cause was submitted to the Court by consent of the parties upon an agreed statement of facts. From this statement it appears that *Lewis* in his lifetime, and between the 12th of *October*, 1830, and the 25th of *July*, 1836, at different times, purchased of the state of *Indiana* several lots or tracts of the *Wabash* and *Erie* canal lands; that *Lewis* died about the 1st of *January*, 1843; that the lands so purchased were returned delinquent for the non-payment of the county and

road taxes assessed upon them for the years 1841 and 1842; that *Lewis* in his lifetime had paid the taxes so assessed for the year 1841; and that the plaintiffs, as his executors, paid to the treasurer of the county of *Allen* the county and road taxes assessed upon said lands for the years 1842 and 1843. *Lewis*, at the times of the respective purchases of said tracts of land, paid one-fourth of the purchase-money, and took from the commissioners of the *Wabash* and *Erie* canal certificates of purchase for each of the several tracts, as provided by the acts authorizing their sale. The remaining three-fourths of the purchase-money still remained due to the state, the interest having been paid regularly in advance. It was further agreed, that if the Court should be of opinion that any part of the before-mentioned taxes, with the penalties, interest, and costs incurred by the return of the lands as delinquent, was illegally assessed and collected, a judgment should be rendered in favour of the plaintiffs for the amount thus illegally assessed and collected; but if the Court should be of a different opinion, and think that the state had the right to tax said canal lands before they were fully paid for, judgment should be rendered for the defendant.

The Circuit Court found for the defendant. A motion for a new trial was overruled and judgment rendered accordingly. Thereupon an appeal was prayed for and granted.

There is but one question to be determined in this case as submitted under the agreement of the parties, namely, the legality of the taxes assessed and collected by the state upon the lands purchased by *Lewis;* and this must depend upon the meaning and effect of the acts of the legislature providing for the sale of those lands.

By the act of 1830, the canal commissioners were authorized to sell them upon the following conditions, namely, one-fourth of the purchase-money and one year's interest upon the remainder to be paid at the time of the purchase, and the other three-fourths to be paid at any time within seventeen years, with interest payable annually in advance. The same act provides that when payment is made according to the terms of the contract, the state shall cause a patent to be made, &c. This act makes no provision relative to taxation. But a subsequent act, approved on the 1st of *February*, 1834,

May Term, 1847.

Hanna
v.
The Board of Commission-
ers, &c.

after reciting in a preamble that doubts had arisen in some counties, whether lands sold for school purposes, or lands sold by the state, whether state seminary lands, canal lands, &c., were liable for taxes for purposes of state or county revenue, provided, that all such lands theretofore sold or thereafter to be sold by the state, should be exempt from taxation until the purchase-money should be fully paid, and that no forfeiture should take place for the non-payment of such tax, &c. But the second section reserved to the legislature the right to repeal this act if it should be deemed expedient. Laws of 1834, p. 343. By the revenue act of 1839, the above-mentioned act of 1834, so far as it exempts canal lands from taxation, is virtually repealed, inasmuch as the act of 1839 declares that "all lands" shall be subject to taxation, and expressly comprehends under the term "all lands" the *Wabash* and *Erie* canal lands. The next law on the subject is the revenue act of 1841, which corresponds in this particular with the act of 1839. Laws of 1839, p. 20.—Laws of 1841, p. 35.

On the part of the plaintiffs, it is contended that under the act of 1830, by the terms of the contract, the state agreed that if the purchaser would pay a certain sum in hand, a certain and fixed sum annually for a definite number of years, and then a certain other sum, he should have a patent; and that an attempt on the part of the state to add to these sums by taxation, is an attempt to compel the purchaser to pay more than he agreed to pay, and is consequently a violation of the contract. It is also contended, that as the revenue laws prior to 1839 all used the same language when designating the objects of taxation, namely, that "all lands, town-lots," &c., "with the exception of lands belonging to the *United States* and this state," should be subject to taxation, and as the legal title and three-fourths of the equity of the lands sold under the act of 1830 remained in the state, these lands were exempted; and that if they were not by law taxable at the times of the sales, the law exempting them entered into and formed a part of each and every contract of purchase, and was an inducement for purchasers to give a higher price for them than they would otherwise have brought.

May Term,
1847.

HANNA
v.
THE BOARD OF
COMMISSION-
ERS, &c.

But it may be answered to this, that it does not follow from the language of the revenue acts above quoted, that these lands were not taxable. They were not taxed for the time being, but the mere fact of their exception from the enumerated objects of taxation for any one year, cannot reasonably be construed into a promise on the part of the state, that they should not be taxed the next or any succeeding year. Neither can the taxes in this case be properly considered a part of the price or purchase-money of the lands. They were intended to assist in defraying the local expenses of the counties in which the lands are situated; and those counties, as well as the whole community, are interested in retaining the taxing power undiminished, and have a right to insist that its abandonment shall not be presumed in any case, unless the deliberate purpose of the state to abandon it expressly appears. *Providence Bank* v. *Billings*, 4 Peters, 561.

Taxes are public burdens, of which every individual may be compelled to bear his part, and that in proportion to the extent of protection he receives or the amount of property held by him, as the will of the legislature may direct. We know of no limits within which the power of taxation can be judicially restrained, so far as regards the different kinds of property to which it may be applied, or the tenure under which such property is held. The power of taxation is said to be an incident of sovereignty, and co-extensive with that of which it is an incident. In the several states of this Union, it extends to all subjects over which their sovereign power extends, and the sovereignty of a state extends to every thing which exists by its own authority or is introduced by its permission. 1 Kent's Comm. 426.— 4 Wheat. 428.— 12 *id*. 419.— 4 Peters, 563. It cannot be material, therefore, whether these lands be held by legal or equitable titles, or whether they were sold by the state or by individuals, so far as regards the power of the state to tax them; and as there was no contract between the state and the purchasers of those canal lands, sold under the authority of the act of 1830, that they should not be subject to taxation, we cannot say that the obligation of any contract has been impaired, or that the taxes paid by the plaintiffs on the lands so purchased were illegally assessed.

May Term,
1847.

HANNA
v.
THE BOARD OF
COMMISSION-
ERS, &c.

But as some of the tracts of land upon which taxes were assessed and paid by the plaintiffs, were purchased by *Lewis* after the passage of the act of 1834, and before its repeal by the revenue acts of 1839 and 1841, it is insisted that so far as regards these tracts at least, there was an express promise held out by the state that they should not become taxable until the purchase-money should be fully paid. It is also contended that the reservation of the right to repeal the act of 1834 is in itself a nullity, as the legislature would have possessed such a right without a reservation of it, one legislature being competent to repeal any act which a former legislature was competent to pass, though rights acquired by contract under such act could not be divested by its repeal. In support of these positions, the plaintiffs rely upon the case of *The State of New Jersey* v. *Wilson,* 7 Cranch, 164. The facts presented by that case were substantially these: The colonial legislature of *New Jersey,* in 1758, authorized the purchase of certain lands for the use of the *Delaware* Indians, in consideration of other lands ceded by the Indians, and stipulated that the lands thus purchased should not thereafter be subject to any tax, "any law, usage, or custom to the contrary thereof in anywise notwithstanding." The Indians occupied the lands purchased for them until 1803, and then sold them to individuals, with the consent of the legislature (such consent being necessary), without any mention being made of the right of taxation. In 1804, the legislature repealed the act exempting those lands from taxation, but such repeal was held to be a breach of the contract made by the act of 1758, and void under the constitution of the *United States.*

There is, however, this difference between the above case and that under consideration, that the legislature of *New Jersey* did not reserve the right to repeal the act exempting the lands purchased for the Indians from taxation. The only reservation was a power to prevent the sale of the lands by the Indians, without the consent of the state, and the right to exercise the power thus reserved was not only recognized, but Chief Justice *Marshall,* in delivering the opinion of the Court, observed, "It is not doubted but that the state of *New Jersey* might have insisted on a surrender of this privilege (the exemption from taxation), as the sole

condition on which a sale of the property should be allowed." It seems to us that if the state of *New Jersey* had done this, it would have been going a step further than our legislature has gone in the present instance; for it would have been making the reservation of one right the ground for insisting upon another which had not been reserved.

If no reservation had been made of the right to repeal the act of 1834, we should certainly have been obliged to conclude that the state was deprived of the power of taxing the lands therein referred to, and sold while the act was in force, until the lands were paid for according to the terms of the sales. But in construing a statute we must give effect to all its provisions, if consistent with each other and with other paramount laws. This cannot be done in the case we are considering, if the construction insisted upon by the plaintiffs is adopted. If such repeal was merely to operate as a notice to subsequent purchasers, that the state would no longer sell the lands upon such terms as were offered by that act, the reservation was totally useless and without meaning, for as it is observed by the plaintiffs' counsel, the state might at any time have repealed it to that extent without such reservation. On the other hand, by considering the act as only declaratory of a present exemption of those lands from taxation, we give a reasonable intent and meaning both to the body of the act and the repealing clause, and in this light we think purchasers were bound to view it. The lands were not taxed until 1839. The exemption declared by the act of 1834 was not valueless, and the state having expressly stipulated that the right of taxation should remain to her, to be exercised whenever it should be deemed expedient by the legislature, her contract was not violated by including those lands in the lists of taxable property in the revenue acts of 1839 and 1841.

We think, therefore, that the lands purchased by *Lewis* were equally liable to taxation under the revenue acts of the years last mentioned, whether purchased before or after the passage of the act of 1834.

*Per Curiam.*—The judgment is affirmed with costs.

*W. H. Coombs* and *R. Brackenridge*, for the appellants.

*S. Bigger*, for the appellee.